642 S.E.2d 471 (2007)
In the Matter of T.J.D.W., J.J.W.
No. COA06-1323.
Court of Appeals of North Carolina.
April 3, 2007.
Dean W. Hollandsworth, Wilmington, for petitioner-appellee New Hanover County Department of Social Services.
Regina Floyd-Davis, Wilmington and Elizabeth Boone, Sanford, for appellee Guardian ad Litem.
Rebecca Haddock, Wilmington, for respondent-appellee father.
Richard Croutharmel, Raleigh, for respondent-appellant mother.
HUNTER, Judge.
Respondent-mother ("respondent") appeals from an order terminating her parental rights as to her minor children, T.J.D.W. and J.J.W. After careful review, we affirm.
On 15 May 2004, New Hanover County Department of Social Services ("DSS") received a referral from medical professionals that respondent's twenty-three-month-old child, T.J.D.W., had received non-accidental serious burns. T.J.D.W. was transferred from Cape Fear Hospital to the University of North Carolina Hospital burn unit due to the severity of the burns. T.J.D.W. was also diagnosed as undernourished and showed evidence of two older burns and other injuries. DSS filed a juvenile petition on 20 May 2004 and alleged T.J.D.W. was abused and neglected. Respondent was criminally charged as a result of this incident.
In early August 2004, respondent gave birth to J.J.W. Upon release from the hospital, J.J.W. was immediately placed in DSS custody due to the pending allegations of abuse of T.J.D.W. On 26 August 2004, the trial court adjudicated T.J.D.W. as abused and neglected; J.J.W. was adjudicated as neglected on 30 August 2004.
DSS initiated a case plan with a goal of reunification of both children between respondent and their respective fathers. The trial court changed the case plan for T.J.D.W. from reunification to adoption following a permanency planning hearing on 17 February 2005. The trial court also modified J.J.W.'s permanent plan from reunification with respondent to adoption with a concurrent plan of reunification with J.J.W.'s father. After a permanency planning hearing on 11 August 2005, the trial court changed the permanent plan for both children to adoption and ordered DSS to pursue termination of all parental rights. On 14 November 2005, T.J.D.W.'s father relinquished his parental rights.
On 5 December 2005, respondent was found guilty by a jury of felony child abuse inflicting serious bodily injury as a result of T.J.D.W.'s burns from May 2004. Respondent was sentenced to ten to thirteen years of active imprisonment. On 30 December 2005, DSS petitioned to terminate respondent's parental rights. A hearing on the petition was conducted on 30 May 2006, and the trial court filed an order on 20 July 2006 that terminated respondent's parental rights to T.J.D.W. and J.J.W. The trial court amended its order on 31 July 2006 to correct a typographical error. Respondent appeals.

*473 I.
Respondent first argues that the trial court lacked subject matter jurisdiction to enter the order in question. This argument is without merit.
Respondent argues that North Carolina courts have no subject matter jurisdiction over proceedings to assign custody or terminate parental rights as to T.J.D.W. because the courts of South Carolina entered orders concerning custody of T.J.D.W. prior to May 2004 (when proceedings began in this case) and the record reflects no evidence that statutory requirements of N.C. Gen.Stat. § 50A-203 to confer subject matter jurisdiction on North Carolina were fulfilled. That is, respondent argues that South Carolina has not relinquished jurisdiction over T.J.D.W., nor is there evidence in the record that North Carolina would be a more convenient forum or that the child or parents do not reside in South Carolina. We disagree.
Specifically, respondent states that from June 2002 to September 2003, the child was in the custody of Florence County (South Carolina) DSS. Because it appears that South Carolina at that time exercised jurisdiction over T.J.D.W., subject matter jurisdiction remains with that state, and a North Carolina court may not thereafter terminate respondent's parental rights because that would supersede South Carolina's determination of custody of T.J.D.W. in violation of N.C. Gen.Stat. §§ 50A-203,-102(11) (2005) ("a court of this State may not modify a child-custody determination made by a court of another state" except in certain circumstances, and "modify" includes an order superseding a previous determination).
However, North Carolina may issue such an order when two conditions are fulfilled: First, a North Carolina court has jurisdiction to make an initial determination under N.C. Gen.Stat. § 50A-201(a), which states that the state has such jurisdiction if it was "the home state of the child on the date of the commencement of the proceeding"; "home state" is defined as a state where the child lived with a parent "for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen.Stat. §§ 50A-201(a)(1),-102(7) (2005). Second, "[a] court of this State . . . determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state[,]" with "presently" referring to the time of the proceeding. N.C. Gen.Stat. § 50A-203(2).
Thus, the requirements of both statutes are fulfilled by a trial court's determination that subject matter exists where it is supported by evidence that the child and a parent (not necessarily both parents) lived in North Carolina for the six months immediately preceding the commencement of the proceeding (20 May 2004), and that the child and both parents had left South Carolina at the time of the commencement of the proceeding. Such is the case here.
At the time of the petition, the child was in the custody of New Hanover Count DSS and had been since 20 May 2004; the mother moved to North Carolina in September 2003, bringing T.J.D.W. with her, and at the date of petition was incarcerated in Raleigh, with no indication in the record that between those times she left the state. The child's father has voluntarily terminated his rights to the child, but at any rate lived in North Carolina at the time of the initial proceeding as evidenced by the order issued on that date that shows his address in Wilmington, North Carolina. There is no evidence in the record that the father ever lived outside of North Carolina at any time relevant to this case.
As respondent points out in her brief, the trial court did not make any findings of fact on this evidence. However, the relevant statutes do not require a finding of fact (although this would be the better practice); N.C. Gen.Stat. § 50A-201(a)(1) states only that certain circumstances must exist, not that the court specifically make findings to that effect, and N.C. Gen.Stat. § 50A-203(2) requires only that a court "determine[]" that the relevant parties live in the state. Because the trial court asserted its jurisdiction in the order ("based upon the foregoing findings of fact, the Court CONCLUDES AS MATTERS OF LAW that this Court has Jurisdiction over the subject matter") and the evidence supports its determination regarding the above statutory requirements, *474 the trial court properly exercised subject matter jurisdiction over this case.
We find the two cases cited by the dissent unpersuasive. The dissent uses the cases to support its conclusion that, because the trial court did not make the specific findings of fact required by these cases to support its assumption of jurisdiction, that assumption was invalid. However, in the first case, Foley v. Foley, 156 N.C.App. 409, 576 S.E.2d 383 (2003), the Court states that it is "troubled" by the lack of information in the record as to the participants' residency at various times, and remanded the case to the trial court to make findings of fact "because the record is devoid of evidence from which it may be ascertained whether or not the trial court had subject matter jurisdiction[.]" Id. at 413, 576 S.E.2d at 386 (emphasis added). In the second case, Brewington v. Serrato, 77 N.C.App. 726, 336 S.E.2d 444 (1985), the Court's reference to the lower court's "proper findings of fact" concerns not a finding that North Carolina was the child's home state, but rather findings as to various biographical facts about the participants. Id. at 732, 336 S.E.2d at 448. The trial court in this case found that respondent had received custody of her older child in September 2003, at which point by respondent's own admission she was living in North Carolina. The record in this case does not present the same troubling lack of evidence and findings that would preclude the trial court's assertion of jurisdiction; as outlined above, it provides ample evidence as to the whereabouts at the relevant times of all participants.
Before proceeding to respondent's other arguments, we note that while the order at issue terminated respondent's rights as to both T.J.D.W. and J.J.W. and her brief and arguments sometimes refer to her rights as to her "children," the only child named in the brief is T.J.D.W. However, because respondent appeals from an order terminating her rights as to both children, we briefly consider here subject matter jurisdiction as to J.J.W.
J.J.W. was born on 5 August 2004 in Wilmington, North Carolina, was immediately taken into custody by New Hanover County (North Carolina) DSS, and has remained in foster care in the state ever since. She has had no contact with any other state, nor has any other state ever asserted jurisdiction over her for any custody proceeding. Because North Carolina is unquestionably J.J.W.'s home state (one of the bases for subject matter jurisdiction per section 50A-201(a)(1)), interstate transfer of jurisdiction was not an issue here, and the trial court properly asserted subject matter jurisdiction over the child.

II.
We next consider respondent's contention that the trial court erred in concluding that grounds existed to terminate her rights as to T.J.D.W. and J.J.W. We find this argument to be without merit.
N.C. Gen.Stat. § 7B-1111 (2005) sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. In re Taylor, 97 N.C.App. 57, 64, 387 S.E.2d 230, 233-34 (1990). Here, the trial court found that the grounds established by clear, cogent, and convincing evidence for terminating respondent's rights were: The child T.J.D.W. was abused and neglected; the child J.J.W. was neglected; respondent willfully abandoned the children for six consecutive months preceding the filing of the petition; respondent left the children in foster care for more than twelve months without showing that reasonable progress had been made to correct the conditions that led to the children's removal; the children are dependent within the meaning of N.C. Gen.Stat. § 7B-101; and respondent committed and was convicted of a felony assault resulting in serious bodily injury to T.J.D.W.N.C. Gen.Stat. § 7B-1111(a)(1), (2), (6), (7), (8).
One of these grounds, that respondent "ha[d] committed a felony assault that results in serious bodily injury to the child, another child of the parent, or other child residing in the home[,]" stems from the incident described above where T.J.D.W. received second-degree burns and was hospitalized for almost a month as a result. N.C. Gen.Stat. § 7B-1111(a)(8). Respondent was convicted of felonious child abuse inflicting serious bodily injury as a result of the incident, and the *475 trial court made a finding of fact in its order to that effect. Respondent argues that because that conviction was on appeal with this Court, it could not be used as grounds for terminating her parental rights, because were the conviction to be overturned, the relevant finding and conclusion in the trial court's order would no longer be valid.
However, this Court has since affirmed respondent's conviction for this crime. State v. Wilson, ___ N.C.App. ___, 640 S.E.2d 403 (2007). As such, it is a valid ground on which to terminate respondent's parental rights as to T.J.D.W.
Further, N.C. Gen.Stat. § 7B-1111(a)(8) states that parental rights can be terminated where the parent "ha[d] committed a felony assault that results in serious bodily injury to the child, another child of the parent, or other child residing in the home[.]" Id. (emphasis added). Therefore, the trial court's further conclusion that this conviction provided a proper basis for terminating respondent's rights as to J.J.W. was also correct.
Because we find that the trial court properly asserted jurisdiction over both children and based its termination of respondent's rights as to both children on proper statutory grounds, we affirm the trial court's order. In light of our holding, we do not address respondent's remaining assignments of error.
Affirmed.
Judge McCULLOUGH concurs.
Judge TYSON dissents in a separate opinion.
TYSON, Judge, dissenting.
The majority's opinion erroneously concludes the trial court properly exercised subject matter jurisdiction over the parties. I disagree and vote to vacate the trial court's order. I respectfully dissent.

I. Standard of Review
This Court has stated:
A proceeding to terminate parental rights is a two step process with an adjudicatory stage and a dispositional stage. A different standard of review applies to each stage. In the adjudicatory stage, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that one of the grounds for termination of parental rights set forth in N.C. Gen.Stat. § 7B-1111(a) exists. The standard for appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support its conclusions of law. Clear, cogent, and convincing describes an evidentiary standard [that is] stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt. If the petitioner meets its burden of proving at least one ground for termination of parental rights exists under N.C. Gen.Stat. § 7B-1111(a), the court proceeds to the dispositional phase and determines whether termination of parental rights is in the best interests of the child. The standard of review of the dispositional stage is whether the trial court abused its discretion in terminating parental rights.
In re C.C., J.C., 173 N.C.App. 375, 380-81, 618 S.E.2d 813, 817 (2005) (internal quotations and citations omitted). "The trial court's `conclusions of law are reviewable de novo on appeal.'" In re D.M.M., ___ N.C.App. ___, ___, 633 S.E.2d 715, 716 (2006) (quoting Starco, Inc. v. AMG Bonding and Ins. Servs., 124 N.C.App. 332, 336, 477 S.E.2d 211, 215 (1996)). "[T]he issue of subject matter jurisdiction may be raised at any time, even on appeal." Huntley v. Howard Lisk Co., 154 N.C.App. 698, 700, 573 S.E.2d 233, 235 (2002) (internal citation omitted), disc. rev. denied, 357 N.C. 62, 579 S.E.2d 389 (2003).

II. Subject Matter Jurisdiction
Respondent argues North Carolina possessed no subject matter jurisdiction over T.J.D.W. because a South Carolina court had entered a custody order relating to T.J.D.W. prior to the North Carolina court purportedly assumed jurisdiction over T.J.D.W. in May 2004. Respondent asserts: (1) both she and T.J.D.W. had lived in South Carolina; (2) from 14 June 2002 to 9 September 2003, T.J.D.W. was in the custody of the Florence County Department of Social Services; (3) *476 the trial court failed to make the statutorily mandated findings and conclusions to exercise subject matter jurisdiction over T.J.D.W.'s case; and (4) no evidence exists in the record from which the trial court could have determined it had subject matter jurisdiction. I agree.
A trial court is statutorily required to find and conclude that it possesses jurisdiction to make a child custody determination under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), N.C. Gen. Stat. §§ 50A-201, 50A-203, and 50A-204, before exercising jurisdiction to terminate parental rights. N.C. Gen.Stat. § 7B-1101 (2005).

A.N.C. Gen.Stat. § 50A-201
N.C. Gen.Stat. § 50A-201 (2005) provides the exclusive means under which a North Carolina court can establish and assert jurisdiction for making a child custody determination. This statute provides that jurisdiction exists under the following circumstances:
(1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:
a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;
(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under G.S. 50A-207 or G.S. 50A-208; or
(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
N.C. Gen.Stat. § 50A-201(a).
In Subsection (a)(1), "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen.Stat. § 50A-102(7) (2005).
Here, both DSS and the guardian ad litem argue sufficient record evidence exists to support North Carolina's exercise of subject matter jurisdiction over T.J.D.W.'s case at the time the termination petition was filed. However, the trial court's assertion of jurisdiction over T.J.D.W. occurred, not on the date that the termination petition was filed, but on 20 May 2004, the date that DSS filed the first juvenile petition regarding T.J.D.W.
The relevant date for a determination of whether the trial court had subject matter jurisdiction over T.J.D.W. is 20 May 2004. See Foley v. Foley, 156 N.C.App. 409, 413, 576 S.E.2d 383, 386 (2003) (Holding that "the appropriate date for home state determination is the date of the commencement of the proceeding, not the date the order is entered.")
DSS's petition also failed to include the statutorily required affidavit asserting the facts required for the trial court to exercise subject matter jurisdiction. A party filing a petition in cases involving child custody, including termination of parental rights actions, is statutorily mandated to provide, under oath, either in the first pleading or in an attached affidavit, information "if reasonably ascertainable, . . . as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period." N.C. Gen.Stat. § 50A-209; see In re Clark, 159 N.C.App. 75, 79, 582 S.E.2d 657, 660 (2003) (The purpose of this statute is to enable the trial court to determine whether *477 subject matter jurisdiction exists in child custody matters.).
This Court has held that the failure to file this affidavit may not defeat the trial court's exercise of jurisdiction where the exercise of jurisdiction is otherwise proper. See Pheasant v. McKibben, 100 N.C.App. 379, 382, 396 S.E.2d 333, 335 (1990) (Failure to comply with former section 50A-209 did not per se defeat subject matter jurisdiction where the trial court properly exercised jurisdiction.), disc. rev. denied, 328 N.C. 92, 402 S.E.2d 417 (1991).
Even without the statutorily mandated affidavit, the trial court failed to make any of the required findings or conclusions concerning whether North Carolina's exercise of subject matter jurisdiction was appropriate in T.J.D.W.'s case. See Foley, 156 N.C.App. at 413, 576 S.E.2d at 386 (Holding that trial court must make specific findings to support its assumption of jurisdiction in a child custody matter.) (citing Brewington v. Serrato, 77 N.C.App. 726, 729, 336 S.E.2d 444, 447 (1985)). In its order adjudicating T.J.D.W. as abused and neglected, the trial court only summarily concluded that it has jurisdiction over the parties and made no further required findings of fact or conclusions to assert subject matter jurisdiction or other findings of fact or conclusions from which this Court can determine that the applicable statutory requirements for subject matter jurisdiction are met.
While the record as developed at the time of the initial juvenile petition does not support a finding of subject matter jurisdiction, the record contains an affidavit filed by DSS concurrently with the termination petition on 30 December 2005 tending to show that T.J.D.W. resided with respondent in North Carolina for approximately eight months prior to the filing of the initial juvenile petition on 20 May 2004. This information was not before the trial court upon its initial assumption of jurisdiction over T.J.D.W. The record, as a whole, may support a finding and conclusion that subject matter jurisdiction is proper under the "home state" provision for the proper assertion of initial jurisdiction under N.C. Gen.Stat. § 50A-201(a).
However, this Court's inquiry does not end there. The undisputed record also shows that T.J.D.W. was previously in the custody of South Carolina DSS and that a South Carolina court had, at least in some capacity, assumed jurisdiction over the custody of T.J.D.W. prior to 20 May 2004. In its adjudication order, the trial court found that T.J.D.W. had "only been in the legal custody of Respondent-Mother since September, 2003 after removal by a South Carolina DSS since her birth due to being cocaine positive."
This finding of fact requires compliance with N.C. Gen.Stat. § 50A-203 in order for a North Carolina court to assert jurisdiction to modify the child custody determination of another state.

B.N.C. Gen.Stat. § 50A-203
Under the UCCJEA, "[m]odification" is defined as "a child-custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." N.C. Gen.Stat. § 50A-102(11). The findings and conclusions of law show that a South Carolina court had entered a custody order with respect to T.J.D.W.
A North Carolina court can only assert subject matter jurisdiction after a "determination" upon findings of fact and conclusions of law under N.C. Gen.Stat. § 50A-203 that one of the following conditions is satisfied:
(1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under G.S. 50A-202 or that a court of this State would be a more convenient forum under G.S. 50A-207; or
(2) A court of this State or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.
N.C. Gen.Stat. § 50A-203 (emphasis supplied). The majority's opinion wholly fails to address the trial court's failure to make the statutory determination required by N.C. Gen.Stat. § 50A-203. This "determination" can only be made by a finding of fact and *478 conclusion of law showing compliance with the statute.
A state's assertion of jurisdiction in a child custody case is also governed by the Federal Parental Kidnapping Prevention Act ("PKPA"). 28 U.S.C. § 1738A. Under the PKPA, modifications of another state's custody determination may only be made if the modifying state "has jurisdiction to make such a child custody determination; and [] the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." 28 U.S.C.A. § 1738A(f).
Neither the trial court's findings of fact nor the evidence in the record supports an assumption of jurisdiction by a North Carolina court under the criteria required by N.C. Gen.Stat. § 50A-203. The record contains no order from a South Carolina court stating that South Carolina relinquished jurisdiction. No evidence tends to show that a South Carolina court determined that a North Carolina court would be a more convenient forum. No findings of fact were made by the trial court, or is there competent evidence in the record, to support any finding or conclusion that "the child's parents, and any person acting as a parent do not presently reside in the other state." N.C. Gen.Stat. § 50A-203.
The trial court did not possess subject matter jurisdiction over the proceedings to terminate respondent's parental rights. See In re N.R.M., T.F.M., 165 N.C.App. 294, 299-301, 598 S.E.2d 147, 150-51 (2004) (Although North Carolina was the home state of the children, North Carolina did not have subject matter jurisdiction over the proceedings to terminate the mother's parental rights. Nothing in the record showed N.C. Gen.Stat. § 50A-203(1) or (2) were satisfied.). In the absence of any findings or conclusions to satisfy the statute, the trial court's order terminating a respondent's parental rights "must be vacated and this case remanded . . . for entry of an order dismissing [DSS's] action." Id. at 301, 598 S.E.2d at 151.

III. Conclusion
The trial court failed to make statutory mandated findings of fact and conclusions of law for North Carolina to assert subject matter jurisdiction under N.C. Gen.Stat. § 50A-203 when the 20 May 2004 juvenile petition was filed. The trial court's orders in Nos. 04 J 208, 04 J 339, 05 J 530, and 05 J 531 must be vacated and this matter remanded for entry of an order dismissing DSS's petition. Id.
The trial court's adjudication of J.J.W. as neglected (No. 04 J 339), as well as the ultimate termination of respondent's parental rights with respect to both juveniles (Nos. 05 J 530 and 05 J 531), were solely based on the trial court's initial adjudication of T.J.D.W. as abused and neglected. I vote to vacate the trial court's order and remand for entry of an order dismissing DSS's action. I respectfully dissent.