IN RE: R.P.C.
No. COA07-244
Court of Appeals of North Carolina.
Filed August 7, 2007
This case not for publication
Attorney Advocate Beth A. Hall, for Guardian ad Litem.
Staff Attorney Elizabeth Kennedy-Gurnee, for Cumberland County Department of Social Services petitioner-appellee.
Duncan B. McCormick, for respondent_mother appellant.
Terry F. Rose for respondent-father appellant.
McCULLOUGH, Judge.
On 6 November 2003, Cumberland County Department of Social Services ("DSS") filed a petition alleging that R.P.C. was a neglected and dependent juvenile. DSS stated that on 2 August 2003, R.P.C. "had episodes of turning blue due to stopping breathing." Respondents contacted 911 and were instructed to take the child to the emergency room. However, respondents did not take R.P.C. to a doctor until 4 August 2003, when the child had a previously scheduled appointment. Respondents claimed that they did not take R.P.C. to the emergency room at Cape Fear Valley "because they did not like the doctors." DSS further alleged that respondents had not made R.P.C. available to a home health nurse on a consistent basis.
DSS also alleged instances of domestic violence. On 27 August 2003, respondent-father "made plausible threats" towards respondent-mother in the child's presence. Respondent-father's behavior was described as "threatening and extreme" toward respondent-mother and R.P.C. On 13 October 2003, respondent-mother reported that respondent-father had assaulted her while in the presence of R.P.C. A law enforcement officer passed by during the incident and respondent-mother summoned him for assistance. DSS also alleged that respondent-father was "recommended for follow up treatment at Mental Health after he showed up at Mental Health out of control and making threats to harm Social Workers involved with his family[.]" Respondent-father failed to keep his scheduled appointment with Mental Health on 4 November 2003, and did not call the therapist to reschedule. DSS further claimed that respondent-father had a substance abuse problem and was not seeking treatment. Finally, DSS noted that it had been relieved of reunification efforts with regard to respondents' other children. Accordingly, DSS claimed that R.P.C. did not receive proper care, supervision, or discipline; was not provided with necessary medical care; lived in an environment injurious to his welfare; and lived in a home where another juvenile had been subjected to abuse or neglect by an adult who regularly lived in the home.
On 2 February 2004, an adjudicatory hearing was held in Cumberland County District Court. At the hearing, respondents stipulated to medical neglect. R.P.C. was then adjudicated a neglected juvenile.
On 7 July 2004, the trial court held a review hearing. The court noted at the hearing that there were pending criminal charges against respondent-father, including: (1) a domestic violence protection order violation with the alleged victim being respondent-mother; (2) assault on a female with the alleged victim being respondent-mother; (3) communicating threats with the alleged victim being respondent-mother; and (4) interfering with emergency communication. Additionally, the court noted that respondent-mother had been charged with second-degree trespass, misdemeanor larceny, and making a harassing phone call. The court found that domestic violence issues would likely continue for the foreseeable future, and concluded that legal and physical custody of R.P.C. should remain with DSS.
A court report shows that respondent-father was arrested on 1 November 2004 after a supervised visit with the child at DSS. Marijuana was found on respondent-father's person. On 25 October 2005, the trial court ordered that reunification efforts cease and that the permanent plan be changed to adoption or placement with a court approved caretaker.
On 1 July 2005, the trial court entered an order terminating respondents' parental rights as to two other children. This Court affirmed on appeal. In re M.C., R.C., 635 S.E.2d 72 (2006), disc. review denied, 361 N.C. 219, 642 S.E.2d 442 (2007).
On 10 October 2005, DSS filed a petition to terminate respondents' parental rights. DSS alleged six grounds for termination: (1) that respondents had neglected the juvenile within the meaning of N.C. Gen. Stat. § 7B-101(15) (2005), and pursuant to N.C. Gen. Stat. § 7B-1111(a)(1)(2005); (2) that respondents had willfully left the juvenile in foster care for more than twelve months without showing that reasonable progress under the circumstances had been made in correcting those conditions that led to the removal of the juvenile, pursuant to N.C. Gen. Stat. § 7B-1111(a)(2); (3) that the juvenile had been placed in the custody of petitioner and that respondents, for a continuous period of six months immediately preceding the filing of the petition, had failed to pay a reasonable portion of the cost of care for the juvenile, although physically and financially able to do so, pursuant to N.C. Gen. Stat. § 7B-1111(a)(3); (4) that respondent-mother is incapable as a result of mental illness, and respondent-father is incapable as a result of mental illness and substance abuse, of providing for the proper care and supervision of the juvenile, such that the juvenile is dependent within the meaning of N.C. Gen. Stat. § 7B-101(9), and that there is a reasonable probability that such incapability will continue for the foreseeable future, pursuant to N.C. Gen. Stat. § 7B-1111(a)(6); (5) that respondents had willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition, pursuant to N.C. Gen. Stat. § 7B-1111(a)(7); and (6) that the parental rights of the respondents with respect to two older children had been terminated involuntarily by a court of competent jurisdiction, and the respondents lack the ability or willingness to establish a safe home, pursuant to the provisions of N.C. Gen. Stat. § 7B-1111(a)(9).
Hearings were held on the petition to terminate respondents' parental rights on 13, 14, and 15 November 2006. The trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3) and (9) to terminate respondents' parental rights. The court further concluded that it was in the juvenile's best interest that respondents' parental rights be terminated. Respondents appeal.
We first consider respondent-mother's argument that the trial court erred by concluding that it had jurisdiction over the subject matter of the action. Prior to exercising jurisdiction over a petition seeking to terminate parental rights, a court must first "find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201, 50A-203, or 50A-204." N.C. Gen. Stat. § 7B-1101 (2005). Respondent-mother contends that the trial court failed to make a specific finding of fact that it had jurisdiction to make a child custody determination under the provisions of N.C. Gen. Stat. §§ 50A-201, 50A-203, or 50A-204. However, this Court has stated that "the relevant statutes do not require a finding of fact (although this would be the better practice)." In re T.J.D.W., ___ N.C. App. ___, ___, 642 S.E.2d 471, 473 (2007) (Tyson, J., dissenting). Instead, this Court has concluded that N.C. Gen. Stat. § 50A-201 merely requires that "certain circumstances must exist, not that the court specifically make findings to that effect, and N.C. Gen. Stat. § 50A-203(2) requires only that a court 'determine[]' that the relevant parties live in the state." T.J.D.W., ___ N.C. App. at ___, 642 S.E.2d at 473. In T.J.D.W., this Court held that, because the trial court asserted its jurisdiction in the order, and the evidence supported its determination, "the trial court properly exercised subject matter jurisdiction over this case." Id. at ___, 642 S.E.2d at 474.
This Court has remanded cases for failure to make findings of fact which would enable the appellate court to determine whether the exercise of jurisdiction was proper. In re J.B., 164 N.C. App. 394, 595 S.E.2d 794 (2004). However, in that case the order contained no findings of fact relating to jurisdiction over the parties and the conclusion of the court was nothing more than a bald assertion of jurisdiction. Id.
In the instant case we, like the Court in T.J.D.W., conclude that, because the trial court asserted its jurisdiction and the findings included in the order supported its determination, the trial court had subject matter jurisdiction to hear the case. The trial court found as fact:
2. That the juvenile is a citizen and resident of Cumberland County, North Carolina and has been for in excess of six 6 months prior to the filing of the petition;
3. That the juvenile, R.P.C., has been in the continual custody of [DSS] since on or about November 6, 2003 as a result of a non-secure custody order and a petition alleging neglect and dependency filed on or about that same date. . ..
4. That the name of the juvenile as it appears on his birth certificate is R.P.C., born on [] 2003 in Cumberland County, North Carolina[.]
We note that respondent-mother did not assign error to these findings of fact. Thus, these findings of fact are deemed supported by competent evidence and are conclusive on appeal. See In re Padgett, 156 N.C. App. 644, 648-49, 577 S.E.2d 337, 340 (2003). Moreover, no evidence was presented that the child or respondents resided outside of North Carolina at any time during the relevant statutory period. Accordingly, we hold that the trial court properly exercised subject matter jurisdiction over this case.
We next consider respondent-mother's argument that the trial court erred by failing to promptly conduct the termination hearing. Respondent-mother argues that the termination hearing was not held until 12 months after the petition was filed, and that she was prejudiced by this delay. N.C. Gen. Stat. § 7B-1109(a) provides that termination hearings should be heard "no later than 90 days from the filing of the petition or motion unless the judge pursuant to subsection (d) of this section orders that it be held at a later time." N.C. Gen. Stat. § 7B-1109(a)(2005). This Court has stated that "time limitations in the Juvenile Code are not jurisdictional . . . and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay." In re C.L.C., K.T.R., A.M.R., E.A.R., 171 N.C. App. 438, 443, 615 S.E.2d 704, 707 (2005), disc. review improvidently allowed, aff'd, 360 N.C. 475, 628 S.E.2d 760 (2006). In the case sub judice, we conclude that respondent-mother has failed to demonstrate prejudice requiring reversal. N.C. Gen. Stat. § 7B-1109(d) provides that:
The court may for good cause shown continue the hearing for up to 90 days from the date of the initial petition in order to receive additional evidence including any reports or assessments that the court has requested, to allow the parties to conduct expeditious discovery, or to receive any other information needed in the best interests of the juvenile. Continuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice, and the court shall issue a written order stating the grounds for granting the continuance.
N.C. Gen. Stat. § 7B-1109(d) (2005). On 6 July 2006, both respondents requested a continuance, and the matter was continued until 3 August 2006. On 3 August 2006, the parties jointly requested a special session of court for the trial due to the anticipation that there would be "lengthy testimony." On 9 August 2006, the trial court granted the request and scheduled the trial for 13 November 2006. Thus, even assuming arguendo that the termination hearing was erroneously delayed, respondent can demonstrate no prejudice since the parties agreed to the delay. See In re D.J.D., D.M.D., S.J.D., J.M.D., 171 N.C. App. 230, 243, 615 S.E.2d 26, 35 (2005) (Since respondent moved for the continuance, he could demonstrate no prejudice from any delay in holding the termination hearing.). We next consider both respondents' arguments that the trial court erred by finding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111 to terminate their parental rights.
N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." D.J.D., 171 N.C. App. at 238, 615 S.E.2d at 32.
In the instant case, the trial court concluded that respondents' parental rights with respect to another child had been terminated involuntarily by a court of competent jurisdiction, and the respondents lacked the ability or willingness to establish a safe home, pursuant to the provisions of N.C. Gen. Stat. § 7B-1111(a)(9). We initially note that respondent-father has not assigned error to this conclusion of law. Accordingly, we conclude that grounds exist pursuant to N.C. Gen. Stat. § 7B-1111(a)(9) to support termination of respondent-father's parental rights.
Respondent-mother does not dispute that her parental rights to two other children were terminated by a court of competent jurisdiction. Rather, respondent-mother argues the trial court's conclusion that she lacked the ability to establish a safe home was not supported by the findings of fact and the evidence. Respondent-mother notes that the trial court made no findings with respect to her housing, and argues that the evidence and accordant findings relating to domestic abuse and respondent-father's drug abuse were not sufficient to establish that she was unable or unwilling to establish a safe home. We disagree.
The trial court based its conclusion on the following findings of fact:
13. That among the issues surrounding the termination in the sibling case were the continued acts of domestic violence between the respondents and the continued abuse of illegal drugs by the respondent-father[.]
14. That the acts of domestic violence have been an on going and recurring problem between the respondents for several years. That despite numerous orders of the court in juvenile, domestic and criminal court; intervention by [DSS] and mental health counseling the respondents have failed to alleviate these conditions.
15. That the respondent[-father] has failed to adequately address his anger and substance abuse issues. That on March 29, 2003 the Respondent[-father] assaulted the Respondent[-mother]. [Respondent-mother] was pregnant with the minor child R.P.C. at the time of the assault. This assault resulted in [respondent-father] being placed on probation.
16. That [respondent-father's] probation was revoked as a result of his absconding, testing positive for illegal drugs and failing to comply with the courts' orders.
17. That the respondents have engaged in some counseling services but have demonstrated little, if any benefit, from said counseling [inasmuch] as, the acts of domestic violence have continued even up to and including April 29 and May 2, 2006[.]
We find competent evidence to support the trial court's findings of fact. First, we take judicial notice that respondents' parental rights as to R.P.C.'s siblings were terminated based atleast partially on incidents of domestic violence and respondent-father's drug use. M.C., 63 S.E.2d 72. Second, although respondents stipulated to medical neglect, the juvenile petition in this case was filed also based on concerns that domestic violence was continuing and because respondent-father had a substance abuse problem. To address these concerns, respondent-father enrolled in domestic violence and anger management classes. Respondent-mother sought therapy to deal with the domestic violence issues. Both parents enrolled in an interfaith program. However, the court noted in the disposition order on neglect that respondent-mother had a history of deception with faith-based organizations. The court further stated that it was not satisfied based on previous findings and previous observations of respondents in court that they were sincere in efforts towards rehabilitation. The court's comments proved to be prophetic, as the domestic violence between the respondents, as well as respondent-father's drug abuse, continued.
As of 7 July 2004, there were several criminal charges pending against respondent-father, including violating a domestic violence protective order, assault on a female, and communicating threats, all involving respondent-mother. On 4 October and 23 November 2004, the trial court entered review orders in which it noted that respondents had been forced to move from a community-based service program due to acts of domestic violence and safety concerns. On 1 November 2004, respondent-father was arrested for possession of marijuana following a visit with R.P.C. Betty Ann Crawford, respondent-father's probation officer, testified that respondent-father missed his appointment with her on 31 January 2006. She called his residence and spoke with respondent-mother. Respondent-mother told Crawford that respondent-father had "left a few days ago and had taken her car without her permission and allegedly had assaulted her." After Crawford suggested the respondent-mother pursue assault charges, respondent-mother told Crawford that she would not, since "in the past they had gotten dismissed because they were going to counseling."
Finally, on 2 May 2006, respondent-mother swore out a criminal complaint against respondent-father. Respondent-mother alleged that on 29 April 2006, respondent-father had "punched both my arms (hitting my arms and my legs  since I was sitting)[.]" Respondent-mother stated that she was "injured" in this incident. Respondent-mother additionally alleged that on 2 May 2006, respondent-father caused her "emotional distress" when he threatened to "destroy [her] life" and "hurt [her] ears talking so loud and close." The criminal complaint further disclosed that despite the history of domestic violence and respondent-father's drug abuse, the respondents were still married and continued to share a home. The charges were dismissed when respondent-mother failed to appear in court.
Accordingly, we conclude there was clear, cogent, and convincing evidence to support the trial court's findings relating to the respondents' persistent history of domestic violence, and the respondent-father's continuing drug abuse. We further conclude that the findings of fact were sufficient to support the trial court's conclusion that respondent-mother lacked the ability or willingness to establish a safe home.
Since grounds exist pursuant to N.C. Gen. Stat. § 7B-1111(a)(9) to support the trial court's order, the remaining grounds found by the trial court to support termination need not be reviewed by the Court. Taylor, 97 N.C. App. at 64, 387 S.E.2d at 233-34.
Respondent-father lastly argues that the trial court erred in concluding that it was in the best interests of the juvenile to terminate his parental rights. We are not persuaded.
"The trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the [juvenile's] best interests." In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001). Factors to consider in determining the juvenile's best interests include: (1) the age of the juvenile; (2) the likelihood of adoption; (3) the impact on the accomplishment of the permanent plan; (4) the bond between the juvenile and the parent; (5) the relationship between the juvenile and a proposed adoptive parent or other permanent placement; and (6) any other relevant consideration. N.C. Gen. Stat. § 7B-1110(a) (2005). The court is to take action "which is in the best interests of the juvenile" when "the interests of the juvenile and those of the juvenile's parents or other persons are in conflict." N.C. Gen. Stat. § 7B-1100(3)(2005). As a discretionary decision, the trial court's disposition order will not be disturbed unless it could not have been the product of reasoning. In re J.B., 172 N.C. App. 747, 751, 616 S.E.2d 385, 387, aff'd, 360 N.C. 165, 622 S.E.2d 495 (2005).
In making its determination to terminate respondents' parental rights, the trial court made the following additional findings of fact:
1. The juvenile is three years old.
2. At the time he has little or no bonding with his parents. He is currently in a safe and nurturing environment.
3. The conditions that led to his removal have not been alleviated to include continued acts of domestic violence.
4. While the Respondents have obtained a home, the Court is not satisfied that this particular residence or these particular parents will be able to provide a safe and nurturing environment for this juvenile.
5. They have been unable to provide such an environment for their children in the past due to continued acts of domestic violence and substance abuse.
6. The court finds that this is likely to continue into the foreseeable future. That the permanent plan for the juvenile is adoption.
Respondent-father assigns error to findings 3, 4, 5, and 6. We conclude that based on the evidence previously cited herein concerning the respondents' history of domestic violence, there was sufficient evidence to support the trial court's findings. Furthermore, based on these findings, we conclude that the trial court did not abuse its discretion in determining that termination was in the juvenile's best interest. Accordingly, we affirm. Affirmed.
Judges WYNN and CALABRIA concur.
Report per Rule 30(e).