An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-299

NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

IN THE MATTER OF:

| | |
|---|---|
| S.B.O. | Brunswick County |
| K.G.O. | Nos. 12 JT 9-11 |
| K.J.O. | |

Appeal by respondents from orders entered 30 December 2013 by Judge Sherry Dew Prince in Brunswick County District Court. Heard in the Court of Appeals 22 July 2014.

> *Jess, Isenberg & Thompson, by Elva L. Jess for appellee Brunswick County Department of Social Services.*
>
> *Peter Wood for appellant mother.*
>
> *Batch, Poore & Williams, PC, by Sydney Batch for appellant father.*
>
> *Womble Carlyle Sandridge & Rice, LLP, by Beth Tyner Jones and Carolyn C. Pratt, for guardian ad litem.*

STEELMAN, Judge.

The trial court had subject matter jurisdiction to terminate mother's parental rights and its order contained

sufficient jurisdictional facts. The court did not abuse its discretion by terminating father's parental rights.

## I. Factual and Procedural History

D.E.O. (father) and S.T.C.O. (mother) appeal from orders terminating their parental rights in the minor children S.B.O., K.G.O., and K.J.O. The Brunswick County Department of Social Services ("DSS") became involved with mother and father in August 2011 due to the unsafe and unsanitary conditions of their home. On 25 January 2012, DSS filed petitions alleging that the juveniles were neglected and dependent, and obtained nonsecure custody orders placing the children in DSS's custody.

At the adjudication hearing held on 13 March 2012, mother and father admitted that the juveniles were neglected in that "the home in which the children resided was dirty . . . and infested with roaches[.]" Information before the trial court also indicated that mother and father's home was unsanitary and filled with dog feces; that dirty laundry, trash, and food covered the floors and countertops; and that both mother and father used drugs. On 19 March 2012 the court entered an order adjudicating the juveniles neglected, and a disposition order directing mother and father to comply with the provisions of the case plan developed by DSS. The case plan required mother and father to abstain from using drugs and submit to random drug

tests, to engage in therapy as recommended, complete parenting classes, and maintain clean and appropriate housing. Review orders were entered in May 2012, August 2012, and November 2012, in which the trial court found that mother and father had made little progress towards compliance with their case plan. Specifically, mother and father failed to establish a safe and sanitary home, did not complete parenting classes, had positive drug tests, and did not consistently attend therapy sessions. Mother and father also moved several times, but failed to demonstrate the ability to maintain an appropriate and sanitary home and denied DSS access to their homes for inspection. In addition, father was twice arrested for assault during this period.

On 27 March 2013, the trial court entered a permanency planning order finding that although the children had been in DSS custody for over a year, mother and father had failed to comply with their case plan. The court changed the permanent plan for the children from reunification with mother and father to adoption and termination of parental rights. On 30 December 2013, the trial court entered an order finding that grounds for termination existed under N.C. Gen. Stat. § 7B-1111(a) (1) (neglect), (2) (12 months in care without progress), and (3) (failure to pay a reasonable portion of the cost of foster

care). On the same day, the trial court entered an order terminating mother and father's parental rights after concluding that it was in the best interests of the children for their parental rights to be terminated.

Mother and father appeal.

## II. Appeal by Mother

Mother's sole argument on appeal is that the trial court "committed prejudicial error" by failing "to make sufficient findings about whether or not the court had subject matter jurisdiction." Mother does not argue that the trial court actually lacked subject matter jurisdiction over the termination proceeding, but only that the court erred by basing its exercise of jurisdiction on the parties' stipulation, and by failing to make required findings regarding subject matter jurisdiction. We disagree.

## A. Standard of Review

"'Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it[,'] . . .'[and] is conferred upon the courts by either the North Carolina Constitution or by statute.'" *In re McKinney*, 158 N.C. App. 441, 443, 581 S.E.2d 793, 795 (2003) (quoting *Haker-Volkening v. Haker*, 143 N.C. App. 688, 693, 547 S.E.2d 127, 130 (2001), and *Harris v. Pembaur*, 84 N.C. App. 666,

667, 353 S.E.2d 673, 675 (1987)). "'Jurisdiction is the power of a court to decide a case on its merits; it is the power of a court to inquire into the facts, to apply the law, and to enter and enforce judgment.'" *In re A.T.*, 191 N.C. App. 372, 375, 662 S.E.2d 917, 919 (2008) (quoting *Jones v. Brinson*, 238 N.C. 506, 509, 78 S.E.2d 334, 337 (1953) (internal citations omitted). "The law is settled that jurisdiction cannot be created by the parties' stipulation, consent, or waiver[.]" *McKinney*, 158 N.C. App. at 447, 581 S.E.2d at 797 (citation omitted).

Subject matter jurisdiction over proceedings to terminate parental rights is governed by N.C. Gen. Stat. § 7B-1101, which provides in relevant part that:

> The court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services . . . at the time of filing of the petition or motion. . . . Provided, that before exercising jurisdiction under this Article, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201, 50A-203, or 50A-204. . . .

Although characterized in the statute as a finding, the determination that jurisdiction exists is a conclusion of law:

> "Matters of judgment are not factual; they are conclusory and based ultimately on various factual considerations. Facts are things in space and time that can be

> objectively ascertained by one or more of the five senses or by mathematical calculation. Facts, in turn, provide the bases for conclusions."

*In re M.N.C.*, 176 N.C. App. 114, 121-22, 625 S.E.2d 627, 632 (2006) (quoting *State ex rel. Utilities Comm. v. Public Staff*, 322 N.C. 689, 693, 370 S.E.2d 567, 570 (1988) (internal citation omitted). "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed *de novo* on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

N.C. Gen. Stat. § 50A-201(a)(1) authorizes a court to exercise jurisdiction over a child custody determination if North Carolina "is the home state of the child on the date of the commencement of the proceeding[.]" Although this Court has recognized that findings of fact related to a trial court's jurisdiction under N.C. Gen. Stat. § 50A-201(a)(1) "would be the better practice," the statute "states only that certain circumstances must exist, not that the court specifically make findings to that effect[.]" *In re T.J.D.W., J.J.W.,* 182 N.C. App. 394, 397, 642 S.E.2d 471, 473-74 (2007). Therefore, where a trial court's order terminating parental rights asserts its jurisdiction and the evidence supports its determination as to the statutory requirements for jurisdiction, "the trial court properly exercise[s] subject matter jurisdiction over th[e] case." *Id.* at 397, 642 S.E.2d at 473-74.

## B. Analysis

In this case, the uncontradicted evidence establishes that the children lived in North Carolina for their entire lives, that DSS was the petitioner in the termination of parental rights case, and that when the petitions were filed the children had been in the legal custody of DSS since January 2012. Mother does not challenge these facts, or dispute that they establish the trial court's subject matter jurisdiction over the termination proceeding, pursuant to N.C. Gen. Stat. § 50A-201(a)(1) and N.C. Gen. Stat. § 7B-1101. Rather than challenging the existence of jurisdiction, mother challenges only the sufficiency of the trial court's findings on this issue. Mother asserts that the trial court relied exclusively on the parties' stipulation that subject matter jurisdiction existed and made no findings supporting its exercise of jurisdiction. We disagree.

In its termination order the trial court, found in relevant part, that:

. . .

> 9(b). That the Petitioner is [DSS.] . . . That the minor children who are the subject of the petitions are in the legal and physical custody of the petitioner.

. . .

> 10. That the minor children were taken into custody by [DSS] on January 25, 2012 pursuant to a non-secure custody order on

> allegations of neglect and dependency. The children were adjudicated neglected juveniles on March 13, 2012. . . .

Based on these and other findings, the trial court concluded "as a matter of law" that "the Court has jurisdiction over the parties and the subject matter[.]" The trial court properly exercised jurisdiction over the termination proceeding, and its exercise of jurisdiction was supported by its findings of fact.

In urging us to reach a contrary conclusion, mother asserts that the trial court was required to make "specific findings" which she contends are missing from the order. However, mother does not identify the missing findings or direct our attention to any requirement for exercise of jurisdiction that is not addressed in the court's order. Mother also directs our attention to several cases that presented a substantive issue regarding the trial court's subject matter jurisdiction, requiring the court to make findings of fact resolving disputed questions of fact. None of the cases cited by mother hold that, where the trial court asserts jurisdiction, its order finds that the DSS is the petitioner and has custody of the minor children, and the facts establishing jurisdiction are not in dispute, a termination of parental rights order is nonetheless "null and void" without other unspecified findings. In this case, there

was ample evidence to support the court's assertion of jurisdiction.

This argument is without merit.

### III. Father's Appeal

Father's sole argument on appeal is that the trial court abused its discretion when it determined that it was in the best interest of the children to terminate his parental rights. We are not persuaded.

### A. Standard of Review

Once statutory grounds for termination have been established, the trial court is required to "determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a). When determining whether it is in the juvenile's best interest to terminate the parent's rights, the statute requires the court to make written findings regarding:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.

> (5) The quality of the relationship between the juvenile and the proposed adoptive parent[.]
>
> (6) Any relevant consideration.

"We review the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002) (citation omitted). The trial court is "subject to reversal for abuse of discretion only upon a showing . . . that the challenged actions are manifestly unsupported by reason." *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980).

## B. Analysis

Father acknowledges that the trial court made appropriate findings regarding the ages of the children, the likelihood of adoption, whether termination of parental rights would facilitate achievement of the permanent plan, and the bond between the children and the proposed adoptive parents. He contends, however, that the trial court failed to give adequate consideration to his bond with the children and his efforts to comply with his case plan.

In support of its conclusion that it was in the children's best interest to terminate father's parental rights, the trial court incorporated its findings in the adjudication order

finding grounds for termination. These findings, unchallenged and thus binding on appeal, include the following:

. . .

10. That the minor children were taken into custody by [DSS] on January 25, 2012 pursuant to a non-secure custody order on allegations of neglect and dependency. The children were adjudicated neglected juveniles on March 13, 2012. . . .

11. The parents entered into an out of home family services agreement on February 20, 2012[.] . . . The case plan required [father and mother to] . . . submit to random drug screens . . . allow inspection of the home by DSS . . . [and] maintain their home in a clean and sanitary manner[.] . . .

. . .

14. On March 26, 2012 . . . the parents' home [was] found to be in disarray and unclean. The conditions were unsanitary[.] . . .

. . .

16. . . . [T]hroughout the course of [DSS's] involvement there remained many issues with regard to cleanliness including roaches, flies and dirty dishes on every flat surface, [and] debris on floors[.] . . .

17. On several occasions, [DSS] was denied access to inspect the home to ascertain if it was being kept clean and safe for the children. The parents did not contact [DSS] to have them inspect the home during the pendency of this action between April 9, 2012 and April 15, 2013.

. . .

19. On September 24, 2012, [a DSS employee inspected mother and father's home and] noted the presence of pests, a lack of cleanliness of walls and carpets, debris in the yard, dirty dishes, and dirty laundry. . . .

. . .

21. . . . . [H]omes in which the parents lived prior to the filing of the petition each presented with an infestation of bugs. . . .

. . .

25. The parents did not demonstrate an ability to maintain their homes in a sanitary fashion, even after intensive in-home services were provided.

. . .

34. [Father] stated that he did not have time to help clean the house as he was always working, "daylight to dark." . . .

. . .

36. [Father] understood the terms and conditions of the case plan. . . .

37. [Father] had anger issues due to the fact that he was working all day and had to clean the house as well.

. . .

39. [Father and mother] separated from each other on February 16, 2013. . . . [Father] began to live in a camper for several months that he acknowledged was not appropriate for the minor children. . . .

40. Neither [father nor mother] paid any monies to [DSS] for the benefit of the minor children prior to the filing of the

petitions to terminate parental rights. . . .

. . .

44. A review hearing was held on July 17, 2012 . . . [at which the] court found that [mother and father] had not enrolled in parenting classes . . . had denied [DSS] entry into their home for inspection and had not been compliant with drug screen requests. . . .

In its disposition order, the trial court made additional findings, including the following:

. . .

3. . . . The permanent plan to secure a safe, stable home for the children within a reasonable period of time is adoption and that has been the plan since the Court held a permanency planning review hearing on March 14, 2013. In order to achieve the permanent plan, termination of parental rights must be accomplished.

4. . . . The children have been in foster care since [March 2012.] . . .

5. The parents have not been actively involved in their daily care since March 2012 due to their failure to comply with case plan goals and objectives.

. . . .

11. . . . [Father] has not called to arrange for a home inspection.

12. . . . [Father] has not demonstrated an ability to maintain a safe, clean home . . . during the Department's involvement between March 2012 and April 2013.

13. The children have been in an "at-risk" adoptive placement since May 10, 2013. . . .

14. The children, ages four, six and seven, are bonded to each other and get along well together, are in the same home, a two parent household, where the foster parents have been able to insure that the children attend all of their medical appointments, obtained a mental health assessment, secured speech services for [S.B.O.], and participate in a number of activities including trips to the zoo, fine art events and sporting events. They are doing well in school[.]

15. The children and the foster parents display reciprocal affection for each other. . . .

. . . .

19. The children are being properly cared for and all of their needs are being addressed and met in the foster home.

20. The foster parents are financially in a position to provide for the children.

. . . .

23. It is necessary in order to promote the healthy and orderly physical and emotional well being of the minor children that a permanent plan for their care be made at this time.

Father does not challenge the above findings of fact, and they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Father argues that the trial court failed to give adequate consideration to evidence of the bond between him and the children and his efforts to comply with the

case plan. The court did not ignore evidence favorable to father, as demonstrated by its findings that:

. . .

4. . . . . The children know their parents and the visits went well.

. . . .

9. . . . [Father] began to participate in therapy . . . on February 19, 2013. It was recommended that he participate in treatment two times a month. . . . Since August he has attended one session per month. His therapist believes that he is actively engaged in treatment sessions[.]

10. [Father] secured a vehicle on February 12, 2013 and showed evidence of valid insurance[.]

11. [Father] executed a lease agreement dated October 1, 2013 for a mobile home with three bedrooms and two baths.

12. [Father] is working forty-seven hours a week, but represents that he has flexibility with his employment to provide for the needs of his children on a daily basis. . . .

. . . .

16. [K.J.O.] has inquired with regard to how her father is doing.

The trial court weighed the evidence and used its discretion to conclude that, despite some findings that reflected positively on father, he still had not demonstrated he could "maintain a safe, clean home" for the children. The court therefore determined it was in the children's best interest that

father's parental rights be terminated so they could be adopted by a family who would best be able to provide them with a "safe, stable home[.]" Given the substantial findings of fact supporting the trial court's conclusion, we cannot agree that the trial court's best interest determination was "manifestly unsupported by reason." *In re A.R.H.B.*, 186 N.C. App. 211, 218, 651 S.E.2d 247, 253 (2007).

The court did not err in its findings of fact and conclusions of law pertaining to subject matter jurisdiction and did not abuse its discretion in concluding that it was in the children's best interest to terminate father's parental rights. We affirm the trial court's orders terminating mother and father's parental rights.

AFFIRMED.

Judges McGEE and ERVIN concur.

Report per Rule 30(e).